| AOC-E-105       Sum Code: CI |  | Case #: **16-CI-00184** |
|---|---|---|
| Rev, 9-14 | | Court: **CIRCUIT** |
| Commonwealth of Kentucky | | County: **JESSAMINE** |
| Court of Justice     Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff,* ADAMS, THOMAS , ET AL VS. NATURE'S EXPRESSIONS LANDSCAPING, INC., *Defendant*

TO:  **NATURE'S EXPRESSIONS LANDSCAPING, INC.**
  **150 HENDRON WAY**
  **NICHOLASVILLE, KY 40356**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Doug Fain, Jessamine Circuit Clerk
Date: **03/08/2016**

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☑ Not Served because: _____

Date: _____ , 20 ____           _____

                                                 Served By

                                    _____

                                                 Title

Summons ID: 130724803242@00000127719
CIRCUIT: 16-CI-00184 Certified Mail
ADAMS, THOMAS , ET AL VS. NATURE'S EXPRESSIONS LANDSCAPING, INC.





Page 1 of 1

Package : 000002 of 000033

Package : 000002 of 000033

Filed        16-CI-00184    03/08/2016          Doug Fain, Jessamine Circuit Clerk

COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
JUDGE _____
CASE NO. _____

THOMAS ADAMS                                        PLAINTIFF
11074 STATE ROUTE 126
CARTHAGE, NEW YORK 13619

and

ADAM ALLNUTT                                       PLAINTIFF
8141 TATES CREEK ROAD
LEXINGTON, KENTUCKY 40515

and

FRANKIE ANDERSON                                   PLAINTIFF
P.O. BOX 1276
NICHOLASVILLE, KENTUCKY 40340

and

STEVEN ATWOOD                                      PLAINTIFF
125 MAPLE AVENUE
VERSAILLES, KENTUCKY 40383

and

CHARLES COOK                                       PLAINTIFF
134 EAST SHOWALTER DRIVE
GEORGETOWN, KENTUCKY 40324

and

JOHN HESKA                                         PLAINTIFF
106 WILLIAMS COURT
DANVILLE, KENTUCKY 40422

Package:000003 of 000033

Package : 000003 of 000033

Filed          16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

and

RON STEWART                                                    **PLAINTIFF**
989 CARDWELL ROAD
HARRODSBURG, KENTUCKY 40330

As Individuals and On Behalf of Themselves
and the Group They Seek to Represent

v.

NATURE'S EXPRESSIONS LANDSCAPING, INC.                        **DEFENDANT**
150 HENDRON WAY
NICHOLASVILLE, KENTUCKY 40356

       SERVE:      MICHAEL A. HAMILTON
               150 HENDRON WAY
               NICHOLASVILLE, KENTUCKY 40356

### ELECTRONICALLY FILED

**** **** ****

### COLLECTIVE ACTION COMPLAINT

Comes now the Plaintiffs, Thomas Adams (hereinafter "Adams"), Adam Allnutt ("Allnutt"), Frankie Anderson ("Anderson"), Steven Atwood ("Atwood"), Charles Cook ("Cook"), John Heska ("Heska"), and Ron Stewart ("Stewart"), by and through their counsel, for themselves individually pursuant to 29 U.S.C. § 207(a) of the Fair Labor Standards Act and § 337.285 of the Kentucky Wage and Hour Act, and for all others similarly situated pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act, and for their Complaint against the Defendant, Nature's Expressions Landscaping, Inc. (hereinafter "NEL" or "Defendant"), state as follows:

1

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

## NATURE OF THE ACTION

1.   The Plaintiffs bring this action against the Defendant for legal relief to redress unlawful violations of the Plaintiffs' rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the collective action provision of the FLSA found at § 216(b), to remedy willful violations of the wage provisions of the FLSA by Defendant, including the failure to pay proper wages for time worked in excess of forty (40) hours during a week.    Plaintiffs Allnutt and Heska also bring individual actions against Defendant for willful violations of KRS § 337.285 of the Kentucky Wage and Hour Act ("KWHA") occurring prior to the applicable statute of limitations for the FLSA, and Plaintiffs Anderson and Stewart bring individual actions against Defendant under § 215(a)(3) of the FLSA for acts of retaliation against them by Defendant for protesting Defendant's unlawful failure to pay proper overtime wages.

2.   In regards to the causes of action brought under 29 U.S.C. § 207(a) the violations of that provision of the FLSA have deprived Plaintiffs, as well as others similarly situated to Plaintiffs, of their lawful wages.   In regards to the individual actions brought under KRS § 337.285, Defendant's violations under that provision of the KWHA have deprived Plaintiffs Allnutt and Heska of their lawful overtime wages.   Finally, in regards to the individual actions brought under 29 U.S.C. § 215(a)(3), Defendant's violations under that provision of the FLSA have caused Plaintiffs Anderson and Stewart to suffer illegal

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

Package :000005 of 000033

Filed          16-CI-00184   03/08/2016      Doug Fain, Jessamine Circuit Clerk

deprivation of their lawful wages, as well emotional distress and other injuries for which they should be lawfully compensated.

3.  Other current and former employees of Defendant are also entitled to receive their proper unpaid overtime wages under 29 U.S.C. § 207(a) for the reasons alleged in this Complaint. Plaintiffs are permitted to maintain this action "for and on behalf of ... themselves and other employees similarly situated," pursuant to 29 U.S.C. § 216(b).

4.  The collective action within this Complaint is brought to recover unpaid overtime wages owed to Plaintiffs and all current and former employees of Defendant who are similarly situated to Plaintiffs, pursuant to the FLSA. The individual actions brought by Plaintiffs Allnutt and Heska seek to recover unpaid overtime wages owed to them under the KWHA. The individual actions brought by Plaintiffs Anderson and Stewart seek to recover all damages available to them for the retaliatory acts of Defendant pursuant to the FLSA.

## JURISDICTION AND VENUE

5.  The actions contained herein are brought pursuant to 29 U.S.C. § 207(a), 29 U.S.C. 215(a)(3), and KRS § 337.285. The collective action contained herein is brought pursuant to 29 U.S.C. § 216(b).

6.  Jessamine Circuit Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which states that "[a]n action to recover the liability prescribed in either of the preceding sentences [of this provision] may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf

3

of himself of themselves and other employees similarly situated." 29 U.S.C § 216(b) (2015).

7.      Defendant, a Kentucky corporation, is subject to personal jurisdiction in the Commonwealth of Kentucky for the purpose of this lawsuit.

8.      Venue is proper in the Jessamine Circuit Court under KRS § 452.460 and 29 U.S.C. § 216(b).

## PARTIES

9.      Plaintiff Thomas Adams is a citizen of the United States, and a resident of New York state. Adams was an employee of Defendant from about February 1, 2014 to about November 30, 2014, and during that timeframe was a resident of the Commonwealth of Kentucky. Adams was employed by a Defendant as a machine operator, and worked out of Defendant's principal place of business in Nicholasville, Kentucky.

10.     Plaintiff Adam Allnutt is, and at all times relevant to this action, a citizen of the United States and resident of the Commonwealth of Kentucky. Allnutt was an employee of Defendant from about February 1, 2007 to about April 30, 2014, working as a crew leader of its production unit out of Defendant's principal place of business in Nicholasville, Kentucky.

11.     Plaintiff Frank Anderson is, and at all times relevant to this action, a citizen of the United States and resident of the Commonwealth of Kentucky. Anderson is a current employee of Defendant, having been first hired by Defendant on September 10, 2013, working as a mechanic out of Defendant's principal place of business in Nicholasville, Kentucky.

4

Package : 000007 of 000033

Filed 16-CI-00184 03/08/2016 Doug Fain, Jessamine Circuit Clerk

12. Plaintiff Steven Atwood is, and at all times relevant to this action, a citizen of the United States and resident of the Commonwealth of Kentucky. Atwood was an employee of Defendant from about June 1, 2015 to about January 30, 2016, working as a crew leader for its landscape construction unit out of Defendant's principal place of business in Nicholasville, Kentucky.

13. Plaintiff Charles Cook is, and at all times relevant to this action, a citizen of the United States and resident of the Commonwealth of Kentucky. Cook was an employee of Defendant from about September 1, 2014 to about July 30, 2015, working as a landscape maintenance crew member out of Defendant's principal place of business in Nicholasville, Kentucky.

14. Plaintiff John Heska is, and at all times relevant to this action, a citizen of the United States and resident of the Commonwealth of Kentucky. Heska was an employee of Defendant from about April 1, 2011 to about January 30, 2014, working as a crew leader for Defendant's production unit out of Defendant's principal place of business in Nicholasville, Kentucky.

15. Plaintiff Ron Stewart is, and at all times relevant to this action, a citizen of the United States and resident of the Commonwealth of Kentucky. Stewart was an employee of Defendant from about September 1, 2015 to about February 15, 2016, working as a crew leader for Defendant's carpentry unit out of Defendant's principal place of business in Nicholasville, Kentucky.

16. Defendant Nature's Expressions Landscaping, Inc. is an entity incorporated under the laws of the Commonwealth of Kentucky, and holds its principal place of business at 150

Package:000006 of 000033

Package : 000006 of 000033

Filed 16-CI-00184 03/08/2016 Doug Fain, Jessamine Circuit Clerk

Filed          16-CI-00184    03/08/2016          Doug Fain, Jessamine Circuit Clerk

Hendron Way, Nicholasville, Kentucky 40356.   Defendant owns and operates a landscape design and architecture firm that conducts business within the County of Jessamine, Kentucky, and other surrounding counties.

## FACTUAL ALLEGATIONS

17.   NEL is a landscape design and architecture firm that creates and constructs outdoor living spaces for clients throughout central Kentucky.  NEL currently employees approximately fifty (50) persons to carry out its day-to-day operations.  NEL's staff consists of all manner of tradespersons involved in the landscaping and construction industries.

18.   Out of the approximately fifty (50) employees on its payroll, NEL pays the majority of its employees (approximately thirty-five (35) to forty (40) persons) through what it characterizes as a "day rate" compensatory scheme.

19.   When an employee is hired by NEL, he or she is provided with an "agreement" as to the terms and conditions of his or her employment, including a description of that employee's wages.  Wages are explained by NEL as a certain sum for a day's work. There is no description of how those wages are broken down, and no mention whatsoever of overtime wages or calculations.

20.   NEL has operated under this "day rate" compensatory scheme since at least February 2007, and pays all employees under this scheme who are not retained in some administrative, managerial, or executive capacity.   The rate of pay NEL assigns to its employees varies from person to person, seemingly based on position and disbursement

6

Package : 000009 of 000033

Package : 000009 of 000033

Filed       16-CI-00184    03/08/2016       Doug Fain, Jessamine Circuit Clerk

of duties. The lowest "day rate" known to Plaintiffs that is offered by NEL is $125.00 per day, while the highest known to Plaintiffs is $180.00 per day.

21. Day rate compensatory plans are recognized under the regulations governing both the FLSA and the KWHA, and are described as consisting of a "flat sum for a day's work … without regard to the number of hours worked in the day." 29 CFR 778.112. *See also* 803 KAR 1:060 § 7(3).

22. NEL's compensatory scheme, however, differs sharply from the characteristics specified in the Code of Federal Regulations and the Kentucky Administrative Regulations, in that NEL does not provide its employees a flat rate without regard to the number of hours worked in a day. Instead, NEL pays employees according to the amount of quarter-days each employee has worked. On information and belief, the method of calculation NEL uses to account for wages owed under this scheme is as follows: NEL establishes for each employee a mandatory minimum amount of hours that the employee is required to work each day. A quarter-day is determined by the division of the aforementioned mandatory minimum hours into four equal parts. NEL then tracks the actual amount of hours an employee works in a day. For days when an employee has not met the mandatory minimum amount of hours, NEL compares the employee's total hours worked against the amount of hours designated as quarter-days for that employee. Those actual hours worked are rounded either up or down to the closest quarter-day, and the employee is paid a sum equal to the employee's agreed upon "day rate" prorated by quarter-days worked.

7

Filed          16-CI-00184     03/08/2016        Doug Fain, Jessamine Circuit Clerk

23.     The aforementioned method of calculation is perhaps best described by the following example: Between the dates of June 7, 2015 and June 13, 2015, Plaintiff Anderson worked 47.283 hours for NEL. During this timeframe, Anderson was being paid by NEL a "day rate" of $160.00 per day, and was required to work ten (10) hour days. According to his direct deposit stub provided him by NEL, Anderson was paid a total of $760.00 before taxes and withholdings. The quotient of Anderson's total pay, $760.00, by his rate of pay, $160.00, equals 4.75, or four and three-quarters days of pay at his agreed upon rate. Anderson worked all days between Monday and Friday of that week, totaling five (5) days of work. Had his pay been based on a true day rate compensatory plan, NEL would have paid Anderson $800.00 for the days he worked, or $160.00 × 5.[1] Instead, as indicated above, NEL fragmented Anderson's hours into quarter-day increments, and paid him to the nearest quarter-day.

## FACTUAL ALLEGATIONS REGARDING OVERTIME PAY

24.     However NEL's compensatory scheme can be characterized, it is a not a true day rate as envisioned by the Code of Federal Regulations and the Kentucky Administrative Regulations. Additionally, this compensatory scheme does not include a method of calculation for determining the accurate amount of overtime owed to NEL's employees, and moreover, the records available to Plaintiffs reflect that NEL does not pay *any* overtime wages to persons employed under NEL's false "day rate" compensatory scheme. These employees, including Plaintiffs and all persons similarly situated, are not

---

[1] This example of the method of calculation utilized by NEL for wages owed for employees does not take into account the overtime multiplier for hours worked over forty (40), and is used only for demonstrating the nature of NEL's compensatory scheme.

8

Package :000011 of 000033

Package : 000011 of 000033

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

exempt or excluded from overtime pay requirements under any recognized exemption or exclusion under the FLSA or the KWHA.

25.     Evidence of NEL's failure to pay employees overtime wages can be found in the above example of Plaintiff Anderson's wages paid for the week of June 7, 2015. During that week, Anderson worked 47.283 hours for NEL. Pursuant to the FLSA and the KWHA, Anderson should have been paid one-and-a-half times his normal rate for the 7.283 hours he worked over forty (40). As NEL does not pay a true day rate to Anderson, the only means by which to determine his normal rate would be to divide his daily rate by the amount of minimum hours he is expected to work in a given day, or $160.00 by 10 hours. The quotient of that function amounts to $16.00 per hour. Therefore, Anderson should have received for the first forty (40) hours worked an amount equal to $16.00 multiplied by 40 hours, or $640.00 total. For Anderson's overtime hours, NEL should have paid him an amount equal to $16.00 per hour multiplied by 1.5, the sum of which would be multiplied by 7.283 to arrive at $174.79 . These two amounts combined equal $814.79, which is the full amount of wages NEL should have paid Anderson under the FLSA and the KWHA. NEL, however, paid Anderson only $760.00 for the week of June 7, 2015, or the equivalent of 4.75 days of work at $160.00 per day. The difference between Anderson's actual compensation and the wages he was owed pursuant to 29 U.S.C. 7(a) comes to $54.79.[2]

---

[2] This example regarding Anderson's overtime pay is for illustrative purposes only, and does not represent the full amount of damages he is owed by NEL. Anderson's total amount of overtime wages will be determined at the trial on this matter.

9

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

Package:000012 of 000033

Package : 000012 of 000033

Filed    16-CI-00184    03/08/2016    Doug Fain, Jessamine Circuit Clerk

Package: 000013 of 000033

26.   In keeping with the example of Plaintiff Anderson, NEL has failed to properly pay all of its "day rate" employees, including the Plaintiffs bringing this action, the overtime wages they have earned while employed by NEL.

27.   Plaintiff Adams was employed by NEL between about February 1, 2014 until about November 30, 2014. NEL hired Adams at an initial rate of $125.00 per day, with a mandatory minimum of 11.5 hours per day.[3] On or around June 1, 2014, NEL began paying Adams $135.00 per day, retaining the same amount of required hours. Throughout the entirety of Adams' employment, Adams consistently worked in excess of forty (40) hours per workweek. Despite the provisions of 29 U.S.C. § 207(a) and KRS 337.285, NEL did not pay Adams one-and-a-half times his normal rate of pay for those hours worked in excess of forty (40).

28.   Plaintiff Allnutt was employed by NEL between about February 1, 2007 until about April 30, 2014. NEL hired Allnutt at an initial rate of $150.00 per day, with a mandatory minimum of 11.5 hours per day. On or around October 1, 2013, NEL began paying Allnutt $170.00 per day, retaining the same amount of required hours. Throughout the entirety of Allnutt's employment, Allnutt consistently worked in excess of forty (40) hours per workweek. Despite the provisions of 29 U.S.C. § 207(a) and KRS 337.285, NEL did not pay Allnutt one-and-a-half times his normal rate of pay for those hours worked in excess of forty (40) during the timeframes permitted for recovery by the respective limitations periods of the FLSA and the KWHA.

_____

[3] As detailed in Paragraphs 21-23, Defendant does not pay its employees a true "day rate", but rather a prorated day rate. However, to continue to point out Defendant's mischaracterizations in this Complaint would needlessly complicate the pleadings. Therefore, the pay rates for each Plaintiff are referred to as "per day" only for the sake of efficiency.

10

Filed    16-CI-00184    03/08/2016    Doug Fain, Jossamine Circuit Clerk

29.    Plaintiff Anderson was hired by NEL on September 10, 2013, and remains employed by NEL as of the filing of this action. NEL hired Anderson at an initial rate of $160.00 per day, with a mandatory minimum of 10 hours per day. On or around September 11, 2015, NEL began paying Anderson $180.00 per day, retaining the same amount of required hours. Throughout the entirety of Anderson's employment, Anderson has consistently worked in excess of forty (40) hours per workweek. Despite the provisions of 29 U.S.C. § 207(a) and KRS 337.285, NEL has not paid Anderson one-and-a-half times his normal rate of pay for those hours worked in excess of forty (40).

30.    Plaintiff Atwood was employed by NEL between about April 1, 2015 until about January 30, 2016. NEL hired Atwood at an initial rate of $125.00 per day, with a mandatory minimum of 11.5 hours per day. On or around October 1, 2015, NEL began paying Atwood $150.00 per day, retaining the same amount of required hours. Throughout the entirety of Atwood's employment, Atwood consistently worked in excess of forty (40) hours per workweek. Despite the provisions of 29 U.S.C. § 207(a) and KRS 337.285, NEL did not pay Atwood one-and-a-half times his normal rate of pay for those hours worked in excess of forty (40).

31.    Plaintiff Cook was employed by NEL between about August 1, 2014 until about July 30, 2015. NEL hired Cook at a rate of $125.00 per day, with a mandatory minimum of 11.5 hours per day. Throughout the entirety of Cook's employment, Cook consistently worked in excess of forty (40) hours per workweek. Despite the provisions of 29 U.S.C. § 207(a) and KRS 337.285, NEL did not pay Cook one-and-a-half times his normal rate of pay for those hours worked in excess of forty (40).

11

Package:000014 of 000033

Package : 000014 of 000033

Filed          16-CI-00184     03/08/2016      Doug Fain, Jessamine Circuit Clerk

32.    Plaintiff Heska was employed by NEL between about April 1, 2011 until about January
       30, 2014. NEL hired Heska at an initial rate of $140.00 per day, with a mandatory
       minimum of 11.5 hours per day. On or around April 1, 2012, NEL began paying Heska
       $160 per day, and around January 1, 2013, NEL began paying Heska $170.00 per day,
       retaining the same amount of required hours for both raises. Throughout the entirety of
       Heska's employment, Heska consistently worked in excess of forty (40) hours per
       workweek. Despite the provisions of 29 U.S.C. § 207(a) and KRS 337.285, NEL did not
       pay Heska one-and-a-half times his normal rate of pay for those hours worked in excess
       of forty (40) during the timeframes permitted for recovery by the respective limitations
       periods of the FLSA and the KWHA.

33.    Plaintiff Stewart was employed by NEL between about September 1, 2015 until about
       February 8, 2016. NEL hired Stewart at an initial rate of $160.00 per day, with a
       mandatory minimum of 11.5 hours per day. On or around November 15, 2015, NEL
       began paying Stewart approximately $165.00 per day, retaining the same amount of
       required hours. Throughout the entirety of Stewart's employment, Stewart consistently
       worked in excess of forty (40) hours per workweek. Despite the provisions of 29 U.S.C.
       § 207(a) and KRS 337.285, NEL did not pay Stewart one-and-a-half times his normal
       rate of pay for those hours worked in excess of forty (40).

## FACTUAL ALLEGATIONS REGARDING RETALIATION

34.    Over the course of his employment with NEL, Plaintiff Stewart questioned NEL's
       compensatory scheme on a number of occasions. On each occasion, Stewart spoke with

12

Package:000015 of 000033

Package : 000015 of 000033

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

his direct supervisor, Jonathan Donley, NEL's master carpenter and manager of its carpentry division.

35.  Stewart first initiated his protest of NEL's compensatory scheme when speaking with Mr. Donley in mid-November 2015. Stewart specifically stated to Mr. Donley that NEL was supposed to pay time-and-a-half for any hours worked over forty (40) in a week. Donley shut down Stewart's protest, stating, "Well, we pay by the day. That's how we pay." This topic was revisited by Stewart with Mr. Donley occasionally throughout the remainder of his employment with NEL.

36.  Stewart and Plaintiff Atwood both filed administrative complaints with the Kentucky Labor Cabinet against NEL for unpaid overtime wages in early 2016. Atwood had been terminated prior to filing the complaint, but Stewart was still employed by NEL at the time of his complaint initiation. Stewart opted to have his identity withheld from official documents created by the Labor Cabinet when he filed.

37.  The administrative complaints filed by Stewart and Atwood have since been withdrawn.

38.  NEL received notice of the complaints against it shortly after those complaints were filed. As demonstrated below, NEL's management began to take measures to uncover the identity of the anonymous complainant after receiving such notice.

39.  On Friday, February 5, 2016, Stewart had a discussion with Mr. Donley after expressing frustration with some of the other employees in the carpentry crew. During this discussion, Stewart stated to Donley that NEL was not paying him and other employees correctly.

13

Package : 000016 of 000033

Package : 000016 of 000033

Filed          16-CI-00184    03/08/2016          Doug Fain, Jessamine Circuit Clerk

40.     The following Monday, February 8, 2016, Stewart visited a physician for an appointment regarding his vision prior to going to work. Once at the NEL office, Mr. Donley called Stewart into his office and informed Stewart that he was being terminated. Mr. Donley stated that Stewart was being terminated because Stewart had not requested time off for the appointment two weeks prior to the date of the appointment.

41.     Following notification that complaints had been made against it through the Labor Cabinet, NEL began searching for the identity of the anonymous complainant. While Stewart was the actual complainant, NEL began erroneously suspect Plaintiff Anderson as the person who filed the anonymous complaint.

42.     On Wednesday, February 24, 2016, NEL was visited by a representative of the Labor Cabinet. During this visit, Anderson was approached by Dale Flygstad, NEL's Vice President. Mr. Flygstad asked Anderson if he was happy with his pay and hours. Mr. Flygstad went on to point out the Labor Cabinet representative's car in the company parking lot, and stated that Plaintiff Atwood, whom Mr. Flygstad characterized as Anderson's "buddy", had gone to the Labor Cabinet. Mr. Flygstad further stated that he wanted to make sure Anderson was happy, as he knew that Anderson and Atwood were good friends.

43.     The following day, Thursday, February 25, 2016, NEL announced that it would be holding a meeting with its employees the next morning to discuss the presence of the Labor Cabinet's representative on the company premises. Mr. Flygstad personally informed Anderson about the meeting, and then stated that he had been told that Anderson had contacted the Labor Cabinet in addition to Atwood. Anderson truthfully

14

Package:000017 of 000033

Package : 000017 of 000033

Filed          16-CI-00184    03/08/2016          Doug Fain, Jessamine Circuit Clerk

denied that he had contacted the Labor Cabinet regarding his pay. Mr. Flygstad went on to state that, at the meeting scheduled for the next morning, NEL was going to explain overtime pay to all of its employees and show that it was complying with "state regulations." Mr. Flygstad then informed Anderson that he wanted to have a private meeting with Anderson following the company-wide meeting.

44.     The next morning, Friday, February 26, 2016, NEL's company-wide meeting was held. Dave Miller, another NEL Vice President, conducted the meeting, during which he explained that the Labor Cabinet was responding to complaints regarding unpaid overtime wages, and that the Cabinet's representative was going through company records. Mr. Miller informed NEL employees that the persons who made the complaints were no longer employed by the company. Mr. Miller went on to state that, once the Labor Cabinet concluded its investigation, it would report that NEL is paying "above and beyond" what is required under Kentucky law. Mr. Miller also relayed to NEL employees that the Labor Cabinet representative had stated NEL needed to change its pay scheme to either hourly or salary, and that Mr. Miller was going to fight the change. Mr. Miller also told the employees that if anyone had any questions about the pay scheme, that person was welcome to speak with the Labor Cabinet representative or an attorney.

45.     During this same meeting, Mr. Miller went on to imply that NEL's compensatory scheme was a benefit to its employees, and then attempted to make the argument that NEL's "day rate" essentially anticipated the overtime hours an employee might work during a given week. Mr. Miller explained that a portion of each employee's day rate was considered regular pay, while another portion was considered overtime. Plaintiff Anderson spoke up

Package: 000018 of 000033

Package : 000018 of 000033

15

Filed        16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

during the meeting and stated that it seemed like the math involved in Mr. Miller's calculation could be done several different ways.

46.   Mr. Miller then held a vote amongst the NEL employees about whether they wanted to change to hourly or salary pay, or keep the "day rate" scheme. Anderson was not present during the vote, as he had to leave the meeting early to take his daughter to school.

47.   When Anderson returned to NEL, the meeting was over. A number of employees asked Anderson what he thought about NEL's compensatory scheme. Anderson responded that he felt Mr. Miller's math was not correct, and went about his duties.

48.   That same day, Mr. Flygstad conducted his scheduled meeting with Anderson. During the meeting, he informed Anderson that all of the other employees voted to keep NEL's "day rate" compensatory scheme. Mr. Flygstad then proceeded to tell Anderson that Anderson's own compensation was going to be changed to hourly, and that he would no longer receive his "day rate." Mr. Flygstad did not inform Anderson what his hourly rate was going to be, but rather that he would "crunch the numbers" and come up with a fair hourly rate.

49.   Later that evening, Mr. Flygstad approached Anderson again, and stated that five other employees had reported Anderson's statement that NEL's math was not correct. Mr. Flygstad proceeded to threaten Anderson, telling Anderson that he needed to keep his mouth shut, and that the conversation regarding overtime pay needed to be shut down and come to an end. Mr. Flygstad specifically stated that any conversation about overtime pay would "not be tolerated." Mr. Flygstad also informed Anderson that he had instructed employees to come directly to him if they heard any more talk about overtime

16

Filed        16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

Filed        16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

pay. This instruction was also directed to Russ Barnes and Paul Morton, two managerial employees of NEL.

50.   One week later, on March 4, 2016, Anderson received a phone call from Mr. Flygstad, who inquired about the whereabouts of a diagnostic computer Anderson often used in his maintenance of NEL vehicles and machinery. This computer was provided to Anderson by NEL, and he was given permission to keep it with him at all times. Anderson informed Mr. Flygstad that the computer was in his possession, as was typical. Mr. Flygstad instructed Anderson to bring the computer to Mr. Flygstad's office when he returned to the NEL premises. Anderson complied with Mr. Flygstad's instruction, leaving it on Mr. Flygstad's desk.

51.   Later that day, Anderson received a phone call from Lisa Keyes, a Human Resources Representative for NEL. Ms. Keyes requested that Anderson come to her office when he returned to the NEL premises. When Anderson arrived, Ms. Keyes stated to Anderson that NEL owed Anderson wages for a couple of his paychecks. Ms. Keyes stated that Anderson was owed $90.00 for one week, and $14.00 for another, and that she was checking Anderson's other timecards for additional pay discrepancies.

52.   Ms. Keyes then stated to Anderson that he needed to forfeit his master key to NEL's premises to her, explaining that Anderson was no longer responsible for building maintenance. Anderson produced the key for Ms. Keyes, who then turned the conversation to a contract she wanted Anderson to sign. Ms. Keyes stated that, according to the contract, Anderson could no longer be on the NEL compound before 7:00 am or after 6:00 pm, and could only be present Mondays through Fridays. Ms. Keyes went on

17

Filed        16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

Package: 000020 of 000033

to explain to Anderson that he would have to clock out every time he left the NEL premises. When Anderson questioned her on this instruction, Ms. Keyes explained that the rule was required because Anderson makes so many "runs." The "runs" to which Ms. Keyes referred concerned Anderson retrieving parts and supplies necessary for his job.

53.   Ms. Keyes then read the rest of the contract to Anderson, which contained a number of provisions that changed the terms and conditions of Anderson's employment. The contract stated that Anderson could work no more than forty (40) hours per week, and that all overtime must be approved by a supervisor. It also stated that Anderson's compensation would now be $22.00 per hour, replacing his previous compensation of $180 per day. This particular provision included the statement that Anderson's "day rate" included "both regular and overtime pay." This language was never before mentioned in Anderson's documents upon hire.

54.   After reading the contract, Ms. Keyes instructed Anderson to sign the document. Anderson requested that Ms. Keyes provide him a copy of the contract so he could take it home and read over its provisions. Ms. Keyes stated that she needed the contract signed immediately, and that she could not leave work until Anderson had committed his signature.

55.   Anderson asked to speak with Mr. Flygstad before signing the agreement. Ms. Keyes agreed, and Anderson made the call. When Mr. Flygstad answered, Anderson informed him about the contract, and asked if he could take a copy home to go over its contents. Mr. Flygstad indicated that he was aware of the contract, and proceeded to discuss with Anderson the hourly rate he was being assigned. Following this conversation, Anderson

18

Package 000021 of 000033

Package 000021 of 000033

Filed     16-CI-00184   03/08/2016      Doug Fain, Jessamine Circuit Clerk

realized he had to pick up his daughter, and had no time to spare to continue discussing the contract, so he signed the agreement and left NEL.

56.     The next day, March 5, 2016, Mr. Flygstad instructed Anderson through a text message not to come into work that day or the next. On Sunday, March 6, 2016, Mr. Flygstad sent Anderson another text message informing him that he was needed for a meeting the next day at 7:00 am.    At that meeting on the morning of March 7, 2016, Mr. Flygstad quoted to Anderson scriptures from the Bible concerning the nature of the concept of judgment. Mr. Flygstad then told Anderson to take the day off.

57.     Later that evening, Anderson contacted Mr. Flygstad by phone to ask if he would be permitted to use the lift at the NEL facility workshop to change the oil in his truck, and Mr. Flygstad granted Anderson permission. Mr. Flygstad then stated that he had a few questions to ask Anderson, the responses to which he wanted to be truthful. Anderson told Mr. Flygstad to proceed with his questions. Mr. Flygstad informed Anderson that he had heard Anderson had hired an attorney to file suit against NEL, and then asked if this was true. Anderson confirmed that he had retained counsel, and was going to file suit against NEL. Anderson reminded Mr. Flygstad that, in the company-wide meeting on February 26, 2015, Mr. Miller had told employees to speak to an attorney if they had questions about the company's overtime pay, so that is what he proceeded to do. Mr. Flygstad responded that Anderson can speak to anyone he wants to speak with, but the Labor Cabinet had informed him that NEL was not doing anything improper with overtime pay.

Package : 000022 of 000033

Package:000022 of 000033

19

Filed                16-CI-00184    03/08/2016         Doug Fain, Jessamine Circuit Clerk

58.  Mr. Flygstad went on to tell Anderson that by suing the company, Anderson was not only suing the business, but the owners and and his coworkers as well. Mr. Flygstad stated that he was not sure what Anderson hoped to get out of the suit, and asked Anderson why he would sue NEL if he liked his job. Mr. Flygstad went on to state that if Anderson continued to pursue his claims, the company could not continue to employ Anderson with the knowledge that he was suing the company.

59.  Mr. Flygstad then asked Anderson if he intended to carry on with his lawsuit. Anderson responded that he did plan to continue bringing the action. Mr. Flygstad responded that NEL was prepared for an attorney and a lawsuit, and had been planning for a legal battle for weeks. Mr. Flygstad then continued to shame Anderson for bringing the suit, in an attempt to make Anderson feel guilty for asserting his rights under law.

60.  Mr. Flygstad asked Anderson what he, Flygstad, should do about the situation. Anderson responded that the decision was not his to make, but was left up to Mr. Flygstad and the other owners of NEL. Mr. Flygstad then stated that he was going to speak with Mr. Miller and Ken Owen, NEL's president, and let them know that Anderson was filing suit against the company, but that he did not believe NEL would be able to keep Anderson as an employee. Mr. Flygstad then suggested that if Anderson would agree to withdraw the suit, Anderson would be able to keep his job, and they would all be able to move on from the situation. Anderson stated that he was not going to be withdrawing the suit. Mr. Flygstad again stated that he did not know what to do, and that he could not keep a person employed at NEL that filed suit against the company. Mr. Flygstad then ended the call.

20

Package:000023 of 000033

Package : 000023 of 000033

Filed          16-CI-00184   03/08/2016          Doug Fain, Jessamine Circuit Clerk

61.     The next morning, March 8, 2016, Anderson received a text message from Mr. Flygstad with a list of tasks to be accomplished that day, but did not mention the conversation from the night prior. Anderson went to an automobile parts store to purchase materials to accomplish the tasks he had been assigned. However, when he attempted to purchase the parts, Anderson's company credit card was declined. Anderson attempted to purchase the parts again, and learned that the card had been cancelled.

62.     Anderson called Heather Morton, a NEL accounting employee whom Anderson had been instructed previously by Mr. Flygstad to contact for any issues with his company card. Ms. Morton stated that she did not cancel the card, and that the only persons with the authority to do so were her and Mr. Flygstad. Ms. Morton then instructed Anderson to contact Mr. Flygstad, who was off site, to find out why the card was cancelled. Anderson called Mr. Flygstad on five different occasions over the next several hours, but Mr. Flygstad would not answer his phone. Anderson was unable to complete all the tasks assigned by Mr. Flygstad, as the tools and materials needed to accomplish those tasks were made unavailable to him. As of the time of this filing, Anderson has not been able to reach Mr. Flygstad to discuss the company card, the tasks assigned, or the future of his employment with NEL.

## COLLECTIVE ACTION ALLEGATIONS

63.     Plaintiffs seek to bring a portion of their claims as a collective action under the provisions of 29 U.S.C. § 216(b).

21

Package 000024 of 000033

Package : 000024 of 000033

Filed 16-CI-00184 03/08/2016 Doug Fain, Jessamine Circuit Clerk

Package:000025 of 000033

64. Plaintiffs bring their causes of action for unlawfully withheld overtime wages under 29 U.S.C. § 207(a) on behalf of themselves and on behalf of a group of persons ("Collective Plaintiffs") similarly situated, defined as follows:

    (a) All present and former employees of the Defendant within the United States who work or worked for Defendant within the past three (3) years immediately preceding the filing of this lawsuit; and

    (b) Who were subject to Defendant's unlawful "day rate" compensatory scheme, through which those persons were not paid one-and-a-half times their standard rate of pay for hours worked in excess of forty (40) per workweek.

65. There are numerous other similarly situated individuals who were, or are currently, employed by Defendant who have been improperly compensated under the same unlawful compensatory scheme utilized by Defendant in violation of the FLSA and who will benefit from the issuance of Court Supervised Notice of the present lawsuit and are given the opportunity to join the present lawsuit pursuant to 29 U.S.C. § 216(b).

66. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the collective action device presents far fewer management difficulties, allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

67. Defendant has intentionally and consistently denied its employees the appropriate amount of wages, one-and-a-half times standard pay rates, for hours worked in excess of forty (40) per workweek.

68. The rights that Plaintiffs seek to enforce for themselves and for the Collective Plaintiffs contain common questions of law and fact.

22

Package : 000025 of 000033

Filed                16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

69.   The relief sought will be effective and appropriate for the entire group of Collective
      Plaintiffs.

70.   The identity of each individual member of the group of Collective Plaintiffs can be
      ascertained from the books and records maintained by the Defendant.

71.   There are no conflicts between Plaintiffs and the group of Collective Plaintiffs, and
      Plaintiffs can and will fairly and adequately represent all members of the group and
      protect their interests.

72.   Plaintiff has retained competent attorneys who are experienced in complex litigation.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF 29 U.S.C. § 207

73.   Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1
      through 72 above, as if fully set forth with particularity herein.

74.   Plaintiffs, and all persons similarly situated to them, worked hours in excess of forty (40)
      per week throughout the course of their employment with Defendant.

75.   Plaintiffs, and all persons similarly situated are not among the class of employees
      exempted or excluded from overtime pay under the provisions of the FLSA.

76.   Defendant, who is an employer as that term is defined by the FLSA, has not paid
      Plaintiffs and all similarly situated persons one-and-a-half times their standard rate of pay
      for those hours in excess of forty (40) per week.

77.   As a result of Defendant's violations of the FLSA, Plaintiffs and all persons similarly
      situated, have suffered damages by failing to receive one-and-half-times their standard

23

Package  000026 of 000033

Package  000026 of 000033

Filed          16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

rate of pay for all hours worked in excess of forty (40) in a workweek in accordance with 29 U.S.C. § 207.

78. Defendant has willfully, knowingly, or recklessly violated the provisions of the FLSA and corresponding Federal regulations by withholding wages unlawfully. Furthermore, Defendant has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by subjecting Plaintiffs and all similarly situated persons to a compensation scheme that is not lawful under 29 U.S.C. § 207. Defendant's explanation of its compensation scheme, that its "day rate" pay includes both regular and overtime pay, is a "split-day" plan, a scheme expressly recognized and forbidden by 29 CFR § 778.501 as a device designed only to evade the overtime requirements of the FLSA.

79. Defendant has not made good faith efforts to comply with the FLSA in regards to its overtime compensation of Plaintiffs and all persons similarly situated.

80. As a result of Defendant's unlawful acts, Plaintiffs and all persons similarly situated have been deprived of their rightful overtime wages, the amounts of which will be fully determined at trial. Plaintiffs and all other persons similarly situated are entitled to recovery of those amounts of unpaid overtime wages, liquidated damages, pre-judgment interest, attorney's fees, costs, and all other compensation to which they are lawfully entitled.

Package:000027 of 000033

Package  000027 of 000033

Filed    16-CI-00184    03/08/2016    Doug Fain, Jessamine Circuit Clerk

## COUNT II: VIOLATION OF KRS § 337.285

81. Plaintiffs Allnutt and Heska incorporate by reference each and every allegation contained in Paragraphs 1 through 80 above, as if fully set forth with particularity herein.

82. Between March 7, 2011 and March 7, 2013, Allnutt and Heska consistently worked hours in excess of forty (40) per week while employed by Defendant.

83. Plaintiffs Allnutt and Heska are not among the class of employees exempted or excluded from overtime pay under the provisions of the KWHA.

84. Defendant, who is an employer as that term is defined by KRS Chapter 337, has not paid Allnut and Heska one-and-a-half times their standard rate of pay for those hours in excess of forty (40) per week.

85. As a result of Defendant's violations of KRS Chapter 337, Plaintiffs Allnutt and Heska have suffered damages by failing to receive one-and-half-times their standard rate of pay for all hours worked in excess of forty (40) in a workweek in accordance with KRS § 337.285.

86. Defendant has willfully, knowingly, or recklessly violated the provisions of KRS Chapter 337 and corresponding Kentucky administrative regulations by withholding wages unlawfully. Furthermore, Defendant has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of KRS Chapter 337, as detailed herein, by subjecting Plaintiffs Allnutt and Heska to a compensation scheme that is not lawful under KRS § 337.285.

87. Defendant has not made good faith efforts to comply with KRS Chapter 337 in regards to its overtime compensation of Plaintiffs and all persons similarly situated.

25

Package : 000028 of 000033

Package : 000028 of 000033

Filed 16-CI-00184 03/08/2016 Doug Fain, Jessamine Circuit Clerk

88. As a result of Defendant's unlawful acts, Plaintiffs and all persons similarly situated have been deprived of their rightful overtime wages, the amounts of which will be fully determined at trial. Plaintiffs and all other persons similarly situated are entitled to recovery of those amounts of unpaid overtime wages, liquidated damages, pre-judgment interest, attorney's fees, costs, and all other compensation to which they are lawfully entitled.

## COUNT III: RETALIATION IN VIOLATION OF 29 U.S.C. § 215(a)(3)

89. Plaintiffs Anderson and Stewart incorporate by reference each and every allegation contained in Paragraphs 1 through 88 above, as if fully set forth with particularity herein.

90. Plaintiffs Anderson and Stewart bring their individual claims against Defendant under 29 U.S.C. § 215(a)(3), the anti-retaliation provision of the FLSA.

91. Plaintiffs Anderson and Stewart engaged in protected activity under 29 U.S.C. § 215(a)(3) by opposing Defendant's unlawful compensatory scheme and failure to pay proper overtime wages.

92. In response to Plaintiff Anderson's opposition and protest of Defendant's unlawful compensatory scheme, Defendant took tangible employment actions against Anderson, including: (1) Defendant's demotion of Anderson; (2) its reduction of his duties, facility access, and responsibilities; (3) its decision to restructure Anderson's pay; (4) a prohibition on Anderson's ability to work overtime hours; (5) Mr. Flygstad's threats to terminate Anderson; (6) Mr. Flygstad's *quid pro quo* offer to Anderson that he could remain employed by Defendant if he withdrew this action; and (7) the cancellation of

26

Package : 000029 of 000033

Package : 000029 of 000033

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

Package:000030 of 000033

Anderson's company credit card to frustrate his ability to perform the tasks assigned to him. These actions by Defendant were not taken towards any other of Defendant's employees.

93. In response to Plaintiff Stewart's opposition and protest of Defendant's unlawful compensatory scheme, Defendant took tangible employment actions against Stewart by terminating his employment.

94. A reasonable employee in the positions of Plaintiffs Anderson and Stewart would have found the Defendant's actions materially adverse.

95. There exists a causal connection between Defendant's materially adverse actions toward Plaintiffs Anderson and Stewart and their protected activity.

96. The Defendant's conduct violated 29 U.S.C. § 215(a)(3).

97. As a direct and proximate cause of the Defendant's actions described herein, Plaintiffs Anderson and Stewart have suffered from a loss of income and benefits, emotional stress and mental anxiety, and are entitled to recovery of lost wages, liquidated damages, pre-judgment interest, attorney's fees, costs, and all other compensation to which they are lawfully entitled. As Defendant's actions towards Plaintiffs Anderson and Stewart were intentional, willful, and malicious, Plaintiffs Anderson and Stewart are also entitled to an award of punitive damages.

## PRAYER FOR RELIEF

98. WHEREFORE, Plaintiffs, on behalf of themselves and all those persons similarly situated that Plaintiffs seek to represent in this action, pray this Court:

27

Package 000030 of 000033

Filed                16-CI-00184    03/08/2016         Doug Fain, Jessamine Circuit Clerk

(a) Allow, pursuant to 29 U.S.C. § 216(b), at the earliest time possible, Plaintiffs to give notice, or that the Court issue such notice, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, employed by Defendant and compensated through its "day rate" compensatory scheme. Such notice shall inform such persons that this action has been filed and of their right to opt into this lawsuit if they were not paid one-and-a-half times their standard rate of pay for all hours worked for Defendant in excess of forty (40) per week;

(b) Declare Defendant's actions to be in violation of 29 U.S.C. § 207;

(c) Deem Defendant's violations as described herein as willful;

(d) Enter judgment against Defendant, in an amount equal to the correct overtime compensation due Plaintiffs and each member of the Collective Plaintiffs, to be determined at the trial of this action;

(e) Enter judgment against Defendant in an amount equal to Plaintiffs' and each member of the Collective Plaintiffs' overtime compensation as liquidated damages pursuant to 29 U.S.C. § 216;

(f) Enter judgment against Defendant in an amount equal to any further incidental or consequential damages as alleged herein or determined at the trial of this action;

(g) Award Plaintiffs and each member of the Collective Plaintiffs interest, costs, and attorney's fees pursuant to 29 U.S.C. § 216; and

Filed                16-CI-00184    03/08/2016         Doug Fain, Jessamine Circuit Clerk

Package : 000031 of 000033

Package:000031 of 000033

Filed          16-CI-00184    03/08/2016        Doug Fain, Jessamine Circuit Clerk

(h) Grant Plaintiffs and each member of the Collective Plaintiffs such further relief as this Court may deem just and proper.

99.    WHEREFORE, Plaintiffs Allnutt and Heska pray this Court:

(a) Declare Defendant's actions to be in violation of KRS § 337.285;

(b) Deem Defendant's violations as described herein as willful;

(c) Enter judgment against Defendant in an amount equal to the correct overtime compensation due Plaintiffs Allnutt and Heska, to be determined at the trial of this action;

(d) Enter judgment against Defendant in an amount equal to the proper overtime compensation of Plaintiffs Allnutt and Heska as liquidated damages pursuant to KRS § 337.385;

(e) Enter judgment against Defendant in an amount equal to any further incidental or consequential damages as alleged herein or determined at the trial of this action;

(f) Award Plaintiffs Allnutt and Heska interest, costs, and attorney's fees pursuant to KRS § 337.385; and

(g) Grant Plaintiffs Allnutt and Heska such further relief as this Court may deem just and proper.

100.    WHEREFORE, Plaintiffs Anderson and Stewart pray this Court:

(a) Declare Defendant's actions against Plaintiffs Anderson and Stewart to be in violation of 29 U.S.C. § 215(a)(3);

(b) Deem Defendant's actions against Plaintiffs Anderson and Stewart to be intentional, willful, and malicious;

29

Package 000032 of 000033

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

(c) Enter judgment against Defendant in an amount equal to any and all compensatory and consequential damages suffered by Plaintiffs Anderson and Stewart including, but not limited to, backpay, front pay, and emotional distress damages;

(d) Enter judgment against Defendant in an amount equal to any and all compensatory and consequential damages suffered by Plaintiffs Anderson and Stewart as liquidated damages pursuant to 29 U.S.C. § 216;

(e) Award Plaintiffs Anderson and Stewart interest, costs, and attorney's fees pursuant to 29 U.S.C. § 216;

(f) Award Plaintiffs Anderson and Stewart punitive damages; and

(g) Grant Plaintiffs Anderson and Stewart such further relief as this Court may deem just and proper.

### JURY DEMAND

101.   Plaintiffs, on behalf of themselves and those who are similarly situated, demand a trial by jury on all issues that are triable by a jury.

Respectfully Submitted,

/s/ Jeremiah W. Reece
Jeremiah W. Reece, Esq.
Abney & McCarty, PLLC
2950 Breckenridge Lane, Suite 13
Louisville, Kentucky 40220
Phone: (502) 459-4108
Fax: (502) 459-4277
Email: jeremiah@amkylaw.com
*Counsel for Plaintiffs*

Filed          16-CI-00184     03/08/2016          Doug Fain, Jessamine Circuit Clerk

Package:000033 of 000033

Package : 000033 of 000033