```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                   CENTRAL DIVISION at LEXINGTON

THOMAS ADAMS, et al.,              )
                                   )
     Plaintiffs,                   )
                                   )           Civil Case No.
v.                                 )           5:16-cv-00098-JMH
                                   )
NATURE'S EXPRESSIONS               )           MEMORANDUM OPINION
LANDSCAPING INC.,                  )              AND ORDER
                                   )
     Defendant.                    )

                              ***
```

## I. INTRODUCTION

Plaintiffs Thomas Adams, Adam Allnut, Frankie Anderson, Steven Atwood, Charles Cook, John Heska, and Ron Stewart move for conditional certification of a collective action to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). [DE 14, 15]. Defendant Nature's Expressions Landscaping, Inc. ("NEL") having filed a Response in Opposition, and Plaintiffs having submitted a Reply, this matter is now ripe for the Court's review. [DE 19, 20]. For the reasons stated herein, the Motion to Certify Collective Action Status is hereby **GRANTED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

NEL is a landscape architecture firm that "creates and constructs outdoor living spaces for clients throughout central Kentucky." [DE 1-1, p. 7-8, ¶ 17]. It employs approximately fifty people, most of whom are tradespersons involved in the landscaping

1

and construction industries. [*Id.*]. The majority of these employees are subject to a "day-rate" compensatory scheme, which NEL has used since February 2007.[1] [*Id.* at p. 8, ¶ 18]. Although NEL's hiring documents indicate that employees will receive a certain sum for a day of work, they do not explain how wages are calculated, nor do they mention overtime wages. [*Id.* at p. 8, ¶ 19].

Under this "day-rate" scheme, NEL assigns each employee a daily wage, presumably based on their position and duties. [*Id.* at p. 8-9, ¶ 20]. However, NEL also requires each employee to work a certain amount of hours per day. [*Id.* at p. 9, ¶ 22]. NEL tracks the actual number of hours worked, then rounds them to the nearest quarter-day, which is determined by dividing the daily minimum hour requirement into four parts. [*Id.*]. At the end of the week, NEL prorates the employee's daily wage to reflect the number of quarter-days actually worked.[2] [*Id.*]. This method is

---

[1] Plaintiffs estimate that thirty-five to forty of NEL's employees are tradespersons, while the remainder are employed in an administrative or managerial capacity. [DE 1-1, p. 8, ¶ 18-20]. Only the former class of employees are subject to the "day-rate" compensatory scheme at issue in this case. [*Id.*].

[2] For example, the Complaint alleges that Plaintiff Frankie Anderson worked 47.283 hours for NEL between June 7, 2015 and June 13, 2015. [DE 1-1, p. 10, ¶ 23]. At that time, NEL required Anderson to work ten hours per day and paid him $160 per day. [*Id.*]. Thus, assuming that Anderson was to be paid a flat sum for a day's work, his wages for the week would have totaled 5 x $160, or $800. [*Id.*]. However, Anderson was paid $760 because he actually worked 47.283 hours that week. [*Id.*]. NEL calculated Anderson's quarter-day as 10/4, or 2.5 hours. [*Id.*]. It then rounded Anderson's actual time worked to the nearest quarter-day, which was 47.5 hours or 4.75 days of work. [*Id.*]. Finally, NEL multiplied 4.75 x $160, yielding $760. [*Id.*].

2

used to compensate employees for all work performed in a given week, even if they worked more than forty hours.[3] [*Id.* at p. 12, ¶ 26].

In early 2016, Plaintiffs Ron Stewart and Steven Atwood filed administrative complaints with the Kentucky Labor Cabinet ("KLC"), seeking unpaid overtime wages from NEL. [DE 1-1, p. 15, ¶ 36]. KLC promptly began investigating NEL's compensation practices. [*Id.*]. Although both men have since withdrawn their administrative complaints, the KLC investigation remains pending. [*Id.* at p. 15, ¶ 37; DE 24]. However, the exact status of that proceeding is unknown. [DE 24].

On March 8, 2016, Plaintiffs filed suit in Jessamine Circuit Court, alleging, *inter alia*, that NEL used this "day-rate" scheme to withhold overtime wages from its employees.[4] [*Id.* at p. 25-26, ¶ 73-80]. NEL promptly removed the case to this Court on the basis of federal question and supplemental jurisdiction. [DE 1].

---

[3] Continuing with the example set forth in footnote 2, Anderson worked 7.283 hours in excess of the 40-hour maximum between June 7, 2015 and June 13, 2015. [DE 1-1, p. 11, ¶ 25]. The Complaint alleges that these overtime hours were calculated in the same manner as his regular wages, and thus, he was not paid 1½ times his normal rate for his overtime work, as required under the FLSA. [*Id.*]. Anderson suggests that his hourly wage would have been $160/10, or $16 per hour. [*Id.*]. Based on this hourly wage, he estimates that was entitled to $16 x 1.5 x 7.283, or $174.79, in overtime pay. [*Id.*]. Thus, Anderson concludes that he should have been paid $800 + $174.79, or $814.79, in wages for the week in question. [*Id.*]. He received $54.79 less than that sum. [*Id.*].

[4] In addition to the FLSA claim, Plaintiffs Adam Allnutt and John Heska assert claims for willful violations of the Kentucky Wage and Hour Act ("KWHA") occurring outside the FLSA's statute of limitations. [DE 1-1, p. 27-28, 81-88]. Plaintiffs Anderson and Stewart also bring claims for retaliation under the FLSA. [*Id.* at p. 28-29, ¶ 89-97]. Because Plaintiffs do not seek to certify these claims as a collective action, the Court need not consider them further for purposes of this analysis.

3

Plaintiffs then filed the instant Motion to Certify Collective Action Status. [DE 14].

### III. ANALYSIS

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. § 202(a). Chief among the FLSA's provisions is the overtime wage requirement, which generally obligates "employers to compensate employees for hours in excess of 40 per week at a rate of 1½ times the employees' regular wages." *Id.* (noting that the overtime compensation requirement does not apply to employees occupying executive, administrative, or professional positions); *see also* 29 U.S.C. §§ 207(a), 213(a).

"[T]he FLSA authorizes collective actions 'by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.'" *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1008 (6th Cir. 2016) (quoting 29 U.S.C. § 216(b)). Similarly situated employees may "opt-into" such suits by "signal[ing] in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (noting that this type of suit "is distinguished from the opt-out approach utilized in class actions under Fed. R. Civ. P. 23").

4

"Courts typically bifurcate certification of FLSA collective action cases." *Monroe*, 815 F.3d at 1008. "At the notice stage, conditional certification may be given along with judicial authorization to notify similarly situated employees of the action." *Id.* Such certification is "by no means final." *Comer*, 454 F.3d at 546-47. "The plaintiff must show only that his position is similar, *not identical*, to the positions held by the putative class members." *Id.* (internal quotations omitted) (emphasis added). "[T]his determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Id.* (stating further that "authorization of notice need only be based on a modest factual showing") (internal quotations omitted).

"Once discovery has concluded, the district court—with more information on which to base its decision and thus under a more exacting standard—looks more closely at whether the members of the class are similarly situated." *Monroe*, 815 F.3d at 1008. The final-certification decision depends upon "a variety of factors, including the factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584 (6th Cir.

5

2009) (internal quotations omitted), *overruled on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

This case sits at the notice stage of the bifurcated-certification process. Plaintiffs ask the Court to conditionally certify their FLSA claims as a collective action and order notice of the action to all current and former employees subject to the "day-rate" scheme, thus providing them with an opportunity to participate therein. Plaintiffs acknowledge that NEL used the "day-rate" scheme to compensate a wide variety of employees, ranging from mechanics to machine operators to crew leaders, at different rates. However, Plaintiffs contend that they are similarly situated to the putative class members because NEL used its "day-rate" scheme to deprive them all of overtime wages.

NEL admits that the contested compensation scheme is not a true "day-rate" system, as that term is defined in 29 C.F.R. § 778.112. Nevertheless, NEL characterizes its methods as FLSA-compliant, explaining that it used "this compensatory scheme to ensure that its employees received 'overtime' pay even on weeks where they could not work a full five days due to weather or other reasons." [DE 19 at 2]. Proceeding on this premise, NEL insists that this case may be resolved by determining whether each employee received all overtime wages earned. Because this inquiry will vary from employee to employee, based on the type of labor performed and the hours worked in a given week, NEL argues that

6

the named Plaintiffs and the putative class members are not similarly situated. Thus, NEL concludes that conditional certification is inappropriate.

Neither of these arguments are relevant to the conditional certification question. Courts do not evaluate the legality of the challenged policy at this stage, nor do they consider the potential nuances of each Plaintiff's claim. *See Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M.D. Tenn. 2015) ("At this first stage of conditional certification, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.") (internal quotations omitted); *O'Brien*, 575 F.3d at 584 (stating that courts may consider "the factual and employment settings of the individual[] plaintiffs" at the final-certification stage).

At this juncture, the Court need only consider whether Plaintiffs have made a "modest factual showing" that their "position is similar, *not identical*, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (emphasis added). Plaintiffs have supported the allegations set forth in their Complaint by submitting several affidavits, all of which state that NEL used its "day-rate" scheme to deprive them of overtime wages. These submissions are sufficient to satisfy the "fairly lenient standard" applicable at the notice stage. *Id.* Accordingly, the Court will conditionally certify Plaintiffs'

7

claims for unpaid overtime wages as a collective action under the FLSA.

In the alternative, NEL asks the Court to stay certification and notice of the collective action, arguing that this measure will avoid the "needless cost" of notifying putative plaintiffs who may accept a settlement offer through the KLC. [DE 19 at 7]. However, such a stay could effectively bar putative class members from participating in this action. After all, the FLSA generally requires employees to file suit for unpaid overtime wages within two years of the accrual of their cause of action. 29 U.S.C. § 255(a) (noting that employees have three years to file suit for willful violations of the FLSA).

Although the named party plaintiffs have already commenced this action, their filing date does not apply to employees who later "opt-in" to the collective action. 29 U.S.C. § 256(b). Rather, claims brought by "opt-in" members of the collective action are commenced upon the filing of written consent to become a party plaintiff therein. *Id.* Because Plaintiffs allege that NEL's policy has been in existence since 2007, it is possible that some putative members have claims that are already time-barred.[5] [DE 1-1, p. 12, ¶ 28]. It would be inconsistent with "remedial purpose" of the FLSA to further limit the ability of putative

---

[5] In fact, two of the named Plaintiffs, Adam Allnut and John Heska, had to file "individual actions … for willful violations of the KWHA occurring prior to the applicable statute of limitations for the FLSA." [DE 1-1, p. 4, ¶ 1].

8

members to join the collective action at this early stage. *See Monroe*, 815 F.3d at 1008. Thus, the Court declines NEL's invitation to stay conditional certification and notice of the collective action.

As a final matter, NEL suggests that Plaintiffs' proposed Notice and Opt-In Consent Form be modified to include "a statement regarding settlement through the [KLC]." [DE 19 at 5]. However, the parties have already entered into an Agreed Protective Order, intended "to keep the KLC administrative matter and this action separated and to prohibit any form of possible double recovery." [DE 25]. That Order does not provide for the inclusion of such language in the Notice and Opt-In Consent Form. [*Id.*]. Moreover, the use of such language could blur the line between the KLC administrative proceedings and this collective action, contrary to the spirit of the Agreed Protective Order. Plaintiffs' proposed Notice and Opt-In Consent Form is therefore approved as drafted. [DE 14-1, 14-2].

### IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiffs' Motion to Certify Collective Action Status [DE 14] is hereby **GRANTED**;

(2) Plaintiffs' FLSA claims may proceed conditionally as a collective action;

9

(3) Plaintiffs' proposed Notice [DE 14-1] and Opt-In Consent Form [DE 14-2] are **APPROVED** to be sent via U.S. First Class Mail and e-mail to the FLSA Notice Group, which includes all individuals currently or formerly employed by NEL who, within the three-year period preceding the date of this Court's certification Order, were compensated under the "day-rate" scheme, as that term is described in Plaintiffs' Complaint, and who worked hours in excess of forty (40) during any week throughout the course of their employment;

(4) NEL shall provide Plaintiffs' counsel with an electronic file containing the names, last known mailing addresses, last known e-mail addresses, last known phone numbers, dates of employment, and dates of birth for all members of the FLSA Notice Group **within seven (7) days of the date of entry of this Order**;

(5) Defendant shall post the Notice in a conspicuous place at its physical location accessible to all employees **for the duration of the opt-in period**;

(6) Plaintiffs' counsel shall cause the Notice and Opt-In Consent Form to be sent to all members of the FLSA Notice Group who have not already filed Opt-In Consent Forms on the docket **within ten (10) business days of receiving the above-referenced electronic file**;

(7) All members of the FLSA Notice Group shall be **provided ninety (90) days from the date of mailing** the Notice and Opt-In Consent Form to opt-in to this lawsuit;

(8) All Opt-In Consent Forms will be deemed to have been filed with the Court the date that they are stamped as received, and Plaintiffs' counsel will file them electronically on the docket on a weekly basis, at a minimum; and

(9) The parties shall file a Joint Status Report, detailing their compliance with this Order and describing the progression of the case, **within fourteen (14) days of the close of the opt-in period**.

This the 1st day of November, 2016.

Signed By:
*Joseph M. Hood* /s/ JMH
Senior U.S. District Judge